## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cr-211 (TSC) |
| | ) | |
| **WILLLIAM ROBINSON**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant William Robinson is currently serving a two-year sentence for fraudulent conduct. He now moves for compassionate release, citing extraordinary health issues. The government does not oppose Robinson's motion, but it does express concerns about where he will live and work upon release, and how he will obtain health insurance. For reasons explained below, the court will GRANT Robinson's Motion for Compassionate Release.

### I.    BACKGROUND

On December 1, 2020, Robinson pled guilty to one count of Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2314, for fraudulent conduct that he committed against his non-profit employer from March 2017 to approximately October 2019. ECF No. 5, Plea Agreement. On March 2, 2021, then-District Court Judge Ketanji Brown Jackson sentenced him to twenty-four months of incarceration, three years of supervised release, and ordered him to pay restitution in the amount of $282,670 to his former employer. ECF No. 17, Judgment. Robinson was permitted to self-surrender, and he began his term of imprisonment on May 4,

2021.  *See* ECF No. 20, Def. Mot., Exhibit A.  He is eligible for home confinement on November 1, 2022, and his projected release date is January 12, 2023.  *Id.*

Judge Jackson has since been elevated to the U.S. Court of Appeals for the D.C. Circuit, and Robinson's case was randomly reassigned to the undersigned Judge.  On September 1, 2021, Robinson, filed a pro se Motion for Compassionate Release.  ECF No. 20, Def. Mot.  He then filed a Motion to Amend his Motion for Compassionate Release, in which he included additional evidence supporting his original motion.  ECF No. 23, Def. Amend. Mot.

In his first motion, Robinson claims extraordinary and compelling reasons for release based on his deteriorating health since he began serving his sentence and asserts that he is at high risk of serious health consequences if he contracts COVID-19.  Def. Mot. at 4-6.  Specifically, Robinson has "Stage 4" kidney failure, type I diabetes that he asserts is not being adequately treated and "which puts him at increased risk of getting COVID-19."  *Id.*  He further claims that at one point he was coughing up blood, which he says the Bureau of Prisons ("BOP") failed to investigate, that he has significantly worsening blood pressure levels, and that he suffers from a host of other chronic medical conditions.  *See* Def. Mot. at 6, Exhibit D.

In his amended motion, Robinson adds documents indicating concerns from Doctors Andrew Choi and Sara Beyer of the Federal Medical Center in Butner, North Carolina ("FMC Butner") about recent imaging of his liver that revealed several large, newly formed lesions, his need for follow-up testing, and the possibility of a cancer diagnosis.  *See* Amend. Mot. at 1, Exs. A, B.  According to Robinson, he was unable to fit in FMC Butner's MRI machine due to his morbid obesity, and Dr. Beyer requested that he be taken to Duke Medical Center to have an MRI in their larger machine.  *Id.* at 1.  The Complex Medical Warden, however, denied Dr. Beyer's request.  *Id.*

The government does not dispute Robinson's purported medical conditions or his inability to receive necessary treatment. In fact, the government points to additional medical records warranting concern, including that Robinson appears to be experiencing severe diabetic neuropathy, causing him a considerable amount of pain that is not currently managed. Gov. Resp., Ex. B at 64. According to the government, while Robinson previously took gabapentin to relieve his neuropathy symptoms, *see id.*, Ex. A at 3-5, 8, his medical records from November 4, 2021 indicate that he is no longer receiving gabapentin and that his pain has worsened, *id.*, Ex. B; *see also id.* at 57-60 (listing active prescriptions from October 22-November 21, 2021, not listing gabapentin). On December 17, 2021, he requested a wheelchair and described his current state:

> My nerve pain is getting so bad that sometimes I don't feel safe walking back and forth to the destinations that I have to go to without falling. The pain is causing me not to go to medical for dressing changes, pill line, etc. because the pain is so painful that I have to stay in bed.

*Id.* at 61.

The government also acknowledges that the statutory factors set for in 18 U.S.C. § 3553 support Robinson's release, and accordingly, does not oppose his motion; however, it requested that "he provide a more detailed release plan to the Court." ECF No. 27, Gov. Resp. at 6-8. Robinson was employed as a Chief Technology Officer when he committed the underlying offense, and the government queries whether he will be able to find employment working in information technology, as is his stated plan. The government also questions whether he will continue receiving adequate healthcare after release while his application for insurance is pending.

In his reply, Robinson, through appointed counsel, provides additional details on his release plan, including that he would live with his father Everette Lawrence in Lawndale, North

Carolina, and work remotely as Chief Information Officer for his brother Jamie Robinson's business, Corvus Resilience Services, Inc., through which he would receive health care via the company's Regence Blue Cross Blue Shield health plan. *See* ECF No. 29, Def. Reply. Robinson submitted letters from his father and brother outlining their roles supporting Robinson with basic food and housing, supervising him at work, and enrolling him in a healthcare plan. *Id.*, Ex. 2.

## II.    LEGAL STANDARD

Robinson, as the moving party, "bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." *United States v. Demirtas*, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020).  A court may consider a defendant's motion for such a reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  A court may reduce a defendant's term of imprisonment if, after considering the applicable factors listed at 18 U.S.C. § 3553(a), it finds both that "extraordinary and compelling reasons warrant the reduction," and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" *United States v. Long*, 997 F.3d 342, 349 (D.C. Cir. 2021) (citing U.S.S.G. § 1B1.13(1)(A), (2)); *see also* 18 U.S.C. § 3582(c)(1)(A)(i).

## III.    ANALYSIS

The parties do not dispute that Robinson has exhausted his administrative rights.  On June 25, 2021, Robinson sent a request for compassionate release pursuant to 18 U.S.C. § 3582 to the Warden at Butner Federal Correctional Institution.  *See* Def. Mot. at 13, Exhibit B.  He

based his request on his medical conditions. *Id.* More than 30 days have lapsed since he made that request to the Warden, and accordingly, he clears this initial hurdle. *See* 18 U.S.C. § 3582(c)(1)(A).

The parties also do not dispute that the factors set forth in 18 U.S.C. § 3553(a) support Robinson's release. *See* ECF No. 27, Gov. Resp. at 8. Having considered each of the section 3553(a) factors, the court agrees. Three factors are particularly instructive in this case.

First, the court considers the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3582(a)(1). The underlying offense, though serious, was non-violent and the victim non-profit organization does not oppose Defendant's release. *See* Gov. Resp. at 8. The court also considers Defendant's early acceptance of responsibility in this case, his compliance with pre-trial release conditions, his voluntary surrender to BOP, the fact that he has not had any disciplinary incidents while in prison, and the fact that BOP considers him to be a low risk for recidivating. *Id.* at 3, Ex. 3; Def. Reply at 3, Ex. 3. Each of these facts weighs in Robinson's favor.

Second, the court considers the need for the sentence imposed to provide "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Robinson provides evidence of several troubling medical conditions, including Stage 4 kidney failure and large, newly formed lesions on his liver that his doctors say may be indicative of cancer. Def. Amend. Mot. at 1. He also alleges numerous instances of inadequate medical treatment, including that the BOP has not investigated Robinson's complaints of coughing up blood, that FMC Butner cannot accommodate Robinson for an MRI that his doctor has ordered, *id.*, and that the pain he suffers from his apparent diabetic neuropathy has recently gone unmanaged, Gov. Resp., Ex. B at 64. Based on Robinson's evidentiary showing—which the

government does not dispute—the court finds that the current sentence clearly is not permitting medical care "in the most efficient manner." 18 U.S.C. § 3553(a)(2)(D).

Third, the court considers the need for the sentence imposed to "protect the public from further crimes of the defendant." 18 U.S.C. § 3555(a)(2)(C). The government questions what it perceives as a lack of specificity in Robinson's plan for obtaining housing, work, and healthcare upon release. *Id.* at 7-8. According to the government, ensuring Robinson's ability to support himself financially, particularly considering his significant medical needs, "is important so that he does not resort to further fraudulent or otherwise illegal activity upon release." *Id.* at 8.

Though this concern is well founded, Robinson adequately addresses it in his reply brief. He details that he would live with his father Everette Lawrence in Lawndale, North Carolina, and work remotely as Chief Information Officer for his brother Jamie Robinson's business. In a letter to the court, Robinson's father states that he is retired and works part-time such that he has both the time and means to provide Robinson with food and housing, as well as "provide him with guidance." *Id.*, Ex. 2. His brother states that he "can help create an environment" for Robinson "that enables him to apply his many skills by returning to helping my small business with its technology infrastructure. He can work remotely and with a flexible schedule, like most of my team, to allow him to meet any remaining requirements of his sentence." *Id.* Defense counsel also confirmed that Robinson can be "enrolled in health insurance prior to his release, that Robinson will be able to receive his ID and group number before his insurance card arrives in the mail, and that he will have immediate access to the [health insurance] network on his effective date." *Id.* Robinson's brother and sister have also offered to cover any upfront healthcare costs in the event of delays in standing up Robinson's healthcare reimbursements. *Id.*

Having considered these statutory factors—and all others set forth in section 3553(a)—the court turns to whether "extraordinary and compelling reasons warrant the reduction," and whether Robinson "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Long*, 997 F.3d at 349. Both conditions are met in this case.

As explained above, Robinson submits evidence of serious physical and medical conditions requiring further assessment and treatment that he is not currently receiving. The government agrees that Robinson's conditions "substantially diminish his ability to provide self-care within prison and from which he is not expected to recover." Gov. Mot. at 6. Accordingly, the court finds that the gravity of Robinson's physical and medical conditions, and his inability to receive necessary treatment as ordered by his doctor, constitute extraordinary and compelling reasons warranting a reduction in his term of imprisonment.

Robinson also does not present a danger to any person or the community. His offense, though serious, was non-violent, and throughout his court supervision and imprisonment, he has maintained compliance with all court and BOP rules. *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (explaining that "postsentencing conduct . . . sheds light on the likelihood that [defendant] will engage in future criminal conduct."). Upon release, his father will provide Robinson with food and housing needs, and Robinson will be able to work remotely for his brother's company. In addition, as a term of his supervised release, Robinson will be required to provide the Probation Office with his income tax returns, authorization for release credit information, and information about any business or finances in which he has a control or interest until all restitution is satisfied. This combination of family and economic support, and Probation Office monitoring, will sufficiently mitigate any risk that Robinson might revert to fraudulent behavior. *See, e.g.*, *United States v. Douglas*, No. CR 10-171-4 (JDB), 2021 WL 214563, at *9

(D.D.C. Jan. 21, 2021) (granting compassionate release where the "availability of economic and emotional support further mitigates any risk that [the defendant] might revert to his old ways and pose a danger to society"); *United States v. Danson*, Crim. No. 10-51 (PLF), 2020 WL 3467887, at *5 (D.D.C. June 25, 2020) (granting release where "[f]amily support and gainful employment thus have the potential to provide [the defendant] with a powerful support system, which one hopes will aid him in readjusting to life outside of prison and help prevent recidivism"); *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020) (granting weight to defendant's "numerous family ties, including family members who will provide for him").

Consequently, the court will adjust Robinson's term of imprisonment to time served. All other elements of Robinson's original sentence, however, will remain in place. As imposed in his initial sentence, he will be subject to three years of supervised release and must pay restitution in the amount of $282,670. The court will also add a condition of supervised release: that Robinson be required to live with his father Everette Lawrence for the duration of his supervised release, a condition which may be modified only with permission from the Probation Office.

Finally, in accordance with the government's request, the court will delay Robinson's release for a period of three business days from the date of the court's Order. This will ensure that BOP personnel have sufficient time to process his release, including presenting him with documentation regarding his obligations while on supervised release.

## IV.     CONCLUSION

For reasons explained above, the court will GRANT Robinson's Motion for Compassionate Release, ECF No. 20, and Motion to Amend his Motion for Compassionate Release, ECF No. 23.  A separate Order will be issued on this date.

Date:  January 12, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge